UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No.

| | |
|---|---|
| American Lobster Products, Inc., <br>     Plaintiff <br><br> v. <br><br> Lobster 207, LLC, <br>     Defendant | VERIFIED COMPLAINT <br><br> JURY DEMAND |

## THE PARTIES TO THIS ACTION

1. The Plaintiff, American Lobster Products, Inc. (hereafter referred to as "American Lobster"), is a corporation registered to do business in the Commonwealth of Massachusetts with a principal place of business located at 239 Boston Street, Topsfield, Commonwealth of Massachusetts, 01983.

2. The Defendant Lobster 207, LLC (hereafter referred to as "207"), is a corporation registered to do business in the State of Maine with a principal place of business at 211 Bar Harbor Road, Unit 2, Trenton, Maine, 04605.

## JURISDICTION

3. Jurisdiction is conferred in this matter pursuant to 28 U.S.C. s. 1332 based on diversity of the parties, with this Court having jurisdiction over this action as Defendant 207 is located and registered in the State of Maine and Plaintiff American Lobster is located and registered in the Commonwealth of Massachusetts. Furthermore, Plaintiff's claim is evaluated at a minimum of $82,089.00, for past damages only, in excess of the damages threshold to establish the remaining prong for federal diversity jurisdiction.

## FACTS

4. Historically, a lobster business named Trenton Bridge Lobster Pound ("Trenton Bridge") was founded by a married couple named Cubby and Josette Pettegrow.

5. Beginning in his early teenage years, their son Warren Pettegrow worked for Trenton Bridge, and the business became a large and prosperous lobster wholesaler.

6. American Lobster served as a lobster broker for Trenton Bridge for several years. Through the pricing that Michael Melito obtained, he and Trenton Bridge were able to build more direct contacts than ever before. At the time of the sale, Trenton Bridge was buying 10 million plus pounds each year, all sold by Michael Melito of American Lobster.

7. Approximately six years ago, Cubby and Josette Pettegrow decided to sell most of the wholesale operation, retaining the retail business and restaurant and the right to be a buying station.

8. American Lobster's President, Michael Melito, knew that the Pettegrows wanted to sell their business, so he introduced them to a potential buyer named David Sullivan.

9. David Sullivan was, and may still be, an employee of the International Association of Machinists and Aerospace Workers, a large union with a prominent presence in Maine's Bath Iron Works, for example.

10. It was David Sullivan's vision to unionize Maine lobstermen/women and organizational papers were filed for 207 with the Maine Secretary of State on or about April 30, 2015.

11. Cognizant of the difficulties inherent in starting up this aspect of the union from scratch, David Sullivan saw a need to implement his plan by buying into an already existing and prosperous wholesale lobster business.

12. The Defendant 207 purchased Trenton Bridge, and thereafter, American Lobster continued to serve as a broker for the new owner, 207. Warren Pettegrow became CEO of 207,

but was terminated in April 2019, due to alleged improprieties on his part. However, in the first year of ownership, David Sullivan and Michael Yohe from Lobster 207 had drastically increased 207's overhead by adding more employees, adding more vehicles and incurring other overpayments and/or unnecessary expenditures.

13. American Lobster's primary purpose, as set forth in Article II of its Articles of Organization, is "to sell, resell and to broker the sale of lobster, seafood and lobster related products."

14. To reiterate, American Lobster served as a broker to 207's predecessor, Trenton Bridge Lobster Pound, and since the sale to 207, as a broker for 207.

15. According to 207's own press release, attached hereto and incorporated herein as Exhibit A, "claims [were] brought by Lobster 207 against its former CEO, Warren Pettegrow, for breaches of his employment agreement and fiduciary duties to the company. After Lobster 207 filed a federal racketeering lawsuit against Pettegrow in December of 2019, Pettegrow demanded that the issue of his firing be decided by an arbitrator and not by a jury." *Id.* at par. 1.

16. The matter was heard by an arbitrator, and as stated in 207's press release (Exhibit A), 207, "In what he described as 'not a close decision,' the arbitrator found that Warren Pettegrow had breached his employment agreement and fiduciary duties to Lobster 207 by committing acts of 'gross misconduct' and that, 'from day one,' Pettegrow had intended to assist his parents and their company, Trenton Bridge Lobster Pound, Inc., in making money in the wholesale lobster business at Lobster 207's expense. The arbitrator found that 'as Lobster 207's CEO, Warren Pettegrow should have been well aware of [Lobster 207's] mission to save lobstermen money by avoiding the middleman as much as possible and bringing transparency to the prices received.'" *Id.* at par. 2.

17. In this press release (Exhibit A), 207 concludes by asserting that, "With the arbitrator's ruling upholding its former CEO's discharge, the Federal racketeering case pending before the United States District Court in Bangor against the Pettegrows, and Trenton Bridge Lobster Pound now continues towards trial. Speaking on behalf of Lobster 207, its Chief Executive Officer, Michael Yohe, stated, 'the company and its membership are gratified that the arbitrator ruled in our favor in recognizing that our former CEO was properly discharged based on the facts and circumstances presented to our board. Lobster 207 remains committed to our mission of protecting the interests of Maine's lobstering men and women. We look forward to presenting our federal court case before a Maine jury.'" *Id.* at pars. 3 & 4.

18. In another article, dated August 27, 2021, attached hereto and incorporated herein as Exhibit B, it is stated that, "The arbitrator concluded that 'as Lobster 207's CEO, Warren Pettegrow should have been well aware of [Lobster 207's] mission to save lobstermen money by avoiding the middleman as much as possible and bringing transparency to the prices received.'" *Id.* at page 2, par. 2.

19. What the arbitrator was unaware of, and/or did not appreciate, was that Lobster 207 is deliberately not paying "the middleman," i.e., American Lobster, an affirmative act not conducive to transparency.

20. On or about May 17, 2021, American Lobster sent an invoice to 207, which with subsequent invoices, has gone unpaid; through August 3, 2021. 207 has not made any payments on invoices sent to it by American Lobster, and the total unpaid balance on these invoices now totals $67,089.00. Copies of these invoices are attached hereto and incorporated herein as Exhibit C.

21. When American Lobster made enquiries to 207's CEO, Michael Yohe, concerning the overdue bills, Yohe claimed that 207 was experiencing bookkeeping problems which it would eventually rectify.

22. In addition, 207 has failed to understand and/or appreciate that through the efforts of American Lobster over several years, the contacts in the industry were substantially built up by Michael Melito and/or American Lobster, and now Lobster 207 is attempting to take advantage of this by "avoiding the middleman," and making it impossible for American Lobster to compete. American Lobster also cannot be paid because at least one other company will not pay out commissions because 207 had made it afraid of communicating with American Lobster.

23. Receiving no payments from 207, American Lobster has attempted to continue to do business outside of any involvement/affiliation with 207. In retaliation, 207 immediately began to artificially inflate the price or products, regardless of what American Lobster offered in a ham-fisted campaign to force American Lobster out of business.

24. American Lobster has no lobster to sell because of the 207's bullying tactics. 207 is contacting American Lobster's customers and urging them not to deal with American Lobster. Meanwhile, 207, the fishermen in Vinal Haven and Jonesport were receiving $.10 to $.20/ pound less than what the MDI, Stonington and North Haven fishermen, something that 207 accused its previous management of doing.

## COUNT I – BREACH OF CONTRACT

25. Plaintiff American Lobster repeats and realleges all allegations made in paragraphs 1 - 24.

26. For several years, 207 had honored its contract(s) with American Lobster to promptly pay the invoices which American Lobster sent to it.

27. 207 has breached its contract with American Lobster by repeatedly failing to honor invoices sent by American Lobster, and 207's failure to pay invoices sent to it from May 17, 2021 through August 3, 2021, has harmed American Lobster.

## COUNT II – RESTRAINT OF TRADE

28. Plaintiff American Lobster repeats and realleges all allegations made in paragraphs 1 - 27.

29. 207 markets and sells its products throughout the United States, and indeed on its own website, states that "Lobster 207 is proud to share our quality, sustainably fished Maine Lobster with the world," and that "[n]o matter where your grocery stores are located throughout the country, you can rest assured knowing that each and every one will have the same high quality lobster."

30. As part of its global reach, 207 is engaged in and its activities substantially affect, interstate commerce. On a more micro level, 207 conducts substantial business in the Commonwealth of Massachusetts, more than sufficient to also subject it to the Commonwealth's Long Arm Statute, G.L. c. 223A, s. 3.

31. 207 has engaged in a continuing contract, combination and/or conspiracy to restrain trade in violation of Massachusetts General Laws c. 93, s. 4 and s. 6 and Maine Revise Statutes Title X, Part 3, c. 201, s. 1101.

32. 207 will use any means to ensure that American Lobster is driven out of business in Maine, including but not limited to not honoring invoices sent to it by American Lobster dating back to May 2021. In the past week alone, 207 has artificially raised the price of lobster, per pound, by over $1.00 to drive American out of business.

33. In furtherance of this continuing contract, combination and/or conspiracy, 207 has engaged in one or more of the following proscribed overt acts:

    a.    not honoring invoices sent to it by American Lobster dating back to May, 2021;

    b.    ordering customers to not use American Lobster as their broker;

    c.    disparaging American Lobster, particularly its President;

    d.    manipulating prices to force American Lobster out of business, and

    e.    207 has destroyed competition in the Maine lobster industry.

34.    207 has, and will continue to, harm American Lobster by its restraint of trade in violation of c. 93.s. 4 and Maine Revise Statutes Title X, Part 3, c. 201, s. 1101; this has harmed American Lobster and will continue to do so until 207 stops this activity.

**COUNT III – CREATION OF MONOPOLY/ATTEMPT TO CREATE MONOPOLY**

35.    Plaintiff American Lobster repeats and realleges all allegations made in paragraphs 1 – 34.

36.    207 has monopolized and/or is attempting to monopolize a part of trade or commerce in the Commonwealth of Massachusetts, and indeed throughout the country, in violation of G.L. c.93, s. 5 and Maine Revise Statutes Title X, Part 3, c. 201, s. 1101.

37.    207 has suppressed competition, to acquire a dominance in the market and to secure the power to control prices to the public harm with respect to any commodity which people are under a practical compulsion to buy, to the detriment to American Lobster and to the general public.

38.    207 has lessened substantially, if not totally destroyed, competition, and created a monopoly in a line of trade or commerce in the Commonwealth of Massachusetts and the State of Maine in violation of G.L. c. 93, s. 6 and Maine Revise Statutes Title X, Part 3, c. 201, s. 1101. respectively.    207 has, and will continue to, harm American Lobster by its creation of a monopoly and/or attempt to create a monopoly in violation of c. 93.s. 5 and Maine Revise Statutes Title X,

Part 3, c. 201, s. 1101. which has harmed American Lobster and will continue to do so until 207 stops this activity.

## COUNT III – INTENTIONAL MISREPRESENTATION

39. Plaintiff American Lobster repeats and realleges all allegations made in paragraphs 1 - 38.

40. 207 has utilized American Lobster for several years, taking advantage of how American Lobster has built up its business and the business of its predecessor, Trenton Bridge.

41. Even after 207 terminated its CEO in 2019, it caused American Lobster to rely on the continuation of 207's relationship with American Lobster and to rely on 207 paying American Lobster on its invoices to 207, as it always had done until May 2021.

42. Based on past business practices of 207, American Lobster reasonably relied on 207 using American Lobster as its broker and paying American Lobster's invoices as they came due.

43. Indeed, American Lobster continued to rely on 207 honoring invoices, believing CEO Michael Yohe stating that late payments were simply the result of bookkeeping errors.

44. Relying on CEO Michael Yohe's assurances that 207 would pay American Lobster, American Lobster continued to work with 207, sending out more invoices; which, as events transpired, 207 has not paid nor ever meant to pay.

45. American Lobster relied to its detriment on 207's assurances and American Lobster has been harmed thereby.

## COUNT IV – NEGLIGENT MISREPRESENTATION

46. Plaintiff American Lobster repeats and realleges all allegations made in paragraphs 1 - 45.

47. 207 disseminated false information to American Lobster and 207 did not exercise reasonable care or competence in obtaining and/or communicating this information.

48. Without limitation, 207 has been seeking to undermine contacts American Lobster has built up over several years with customers, has failed to pay invoices sent to it by American Lobster without warning and anything resembling an explanation; 207; is seeking to pass off the blame and the consequences for its own mismanagement of its business unfairly to American Lobster.

49. 207 has harmed American Lobster and will continue to negatively impact American Lobster's reputation and fiscal stability by engaging in its representations.

## COUNT V – INTERFERENCE WITH ADVANTAGEOUS RELATIONSHIPS

50. Plaintiff American Lobster repeats and realleges all allegations made in paragraphs 1 - 49.

51. 207 knew about American Lobster's ongoing business relationships which stretched back to before 207's formation.

52. 207 has outrageously interfered with these relationships with considerable malice and employed unfair and deceptive methods to try to drive American out of business.

53. American Lobster has lost all of its business due to the unwarranted and malicious business practices and will continued to be harmed until 207's practices cease.

## COUNT VI – VIOLATION OF G.L. c. 93A

54. Plaintiff American Lobster repeats and realleges all allegations made in paragraphs 1 - 53.

55. 207 is engaged in substantial trade or commerce in the Commonwealth of Massachusetts as a seller of lobster products and was incorporated for this purpose pursuant to M.G.L. 93A, s. 2.

56. 207 has willfully and knowingly engaged in unfair and deceptive acts and practices by misleading American Lobster, failing to pay invoices from American Lobster, restraining trade and circumventing American Lobster by seeking to contact and do business directly with customers brought to it by American Lobster and/or Michael Melito.

57. 207's willful and knowing engagement in unfair and deceptive acts and practices in its relations with American Lobster and/or the customers brought to it by American Lobster, has harmed American Lobster fiscally and will continue to so harm American Lobster until these practices cease.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff American Lobster Products Inc. demands the following relief:

1. Judgment in its favor against Defendant Lobster 207 in an amount commensurate with its damages suffered, together with interest, costs, and attorney fees on Counts I-V; and triple damages with costs, interests and attorney fees on Count VI;

2. A temporary restraining order followed by the issuance of a preliminary injunction prohibiting Defendant Lobster 207 LLC from artificially manipulating prices to American Lobster, contacting American Lobster's customers, restraining trade and disparaging American Lobster and its employees, agents, officers and/or shareholders.

3. A temporary restraining order followed by the issuance of a preliminary injunction prohibiting Defendant Lobster 207, LLC from spending and alienating assets previously taken by it that are due to Plaintiff American Lobster Products, Inc., and the depositing of all contested amounts of money into an escrow account during the pendency of this action, and

4. Whatever other relief this court deems meet and just.

## DEMAND FOR JURY TRIAL

A TRIAL BY JURY IS DEMANDED ON ALL ISSUES SO TRIABLE

THIS COMPLAINT IS SIGNED PERSONALLY BY THE PLAINTIFF'S PRESIDENT UNDER THE PAINS AND PENALTIES OF PERJURY AND IS TRUE AND ACCURATE TO HIS PERSONAL KNOWLEDGE AND INFORMATION

Dated: September 7, 2021

Plaintiff American Lobster Products, Inc.
By its President,

/s/ Michael Melito
Michael Melito, President

By its attorney,

/s/ Donald Hubbard
Donald Hubbard, Esq.
46 Stratford Street
Boston, MA 02132
617-469-0775
BBO No. 543971
donaldjhubbard@gmail.com

## CERTIFICATE OF SERVICE

Service of process will be made on the Defendant pursuant to Federal Rules of Civil Procedure and Local Rules after the summons is received by the clerk's office.

/s/ Donald Hubbard
Donald Hubbard, Esq.